J-A10032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| 5100 FIFTH AVENUE CONDOMINIUM ASSOCIATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ESTATE OF ESTHER F. ASCHEIM, BARBARA EFFRON, IN HER CAPACITY AS ADMINISTRATOR OF THE ESTATE | |
| APPEAL OF: BARBARA EFFRON, IN HER CAPACITY AS ADMINISTRATOR OF THE ESTATE OF ESTHER F. ASCHEIM | No. 846 WDA 2015 |

Appeal from the Judgment Entered April 29, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 12-002331

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 4, 2016**

Appellant, Barbara Effron, in her capacity as administrator of the Estate of Esther F. Ascheim, appeals from the judgment entered in the Allegheny County Court of Common Pleas, in favor of Appellee, 5100 Fifth Avenue Condominium Association, in the amount of $55,461.31 for unpaid condominium fees and $12,473.50 for attorney's fees and costs, in this breach of contract action.  We affirm.

The relevant facts and procedural history of this case are as follows. Esther F. Ascheim ("Decedent") and her husband purchased a condominium governed by Appellee in 1973.  Pursuant to the condominium agreement signed at the time of purchase, Decedent and her husband were responsible

for monthly condominium and maintenance fees. After the death of Decedent's husband, Decedent resided in the condominium with her son, Cappy Ascheim. Starting in January 2006, neither Decedent nor Cappy Ascheim made the required monthly payments for condominium and maintenance fees. Decedent died on January 18, 2007, and the court appointed Appellant as administratrix of Decedent's estate on September 11, 2009. Meanwhile, Cappy Ascheim continued to reside in the condominium without paying any condominium or maintenance fees. On July 6, 2011, Appellant had Cappy Ascheim forcibly evicted from the condominium. Appellant subsequently placed the condominium on the market for sale.

On February 2, 2012, Appellee filed a complaint against Appellant for the unpaid condominium, maintenance, and late fees plus attorney's fees and costs. On February 21, 2012, Appellant filed preliminary objections, which the court overruled on March 21, 2012. On May 14, 2012, Appellant filed an answer and new matter, which claimed, *inter alia*, the doctrine of laches barred Appellee's claims and the court lacked subject matter jurisdiction. The parties proceeded to a jury trial, and the jury returned a verdict in favor of Appellee on March 18, 2013. Specifically, the jury found Appellant owed Appellee $55,461.31 in unpaid condominium, maintenance, and late fees.

On March 21, 2013, Appellee filed a post-trial motion, which asked the court to mold the verdict to include attorney's fees and costs, pursuant to

Section 3315 of the Uniform Condominium Act. Appellant filed a post-trial motion on March 26, 2013, which asked the court to grant judgment notwithstanding the verdict ("JNOV") in favor of Appellant or order a new trial on the issue of damages. On September 9, 2013, Appellant filed a response to Appellee's post-trial motion to mold the verdict, which alleged for the first time that Appellee's delay in filing suit resulted in the extinguishment of any lien Appellee possessed on the condominium. On April 29, 2015, the court granted Appellee's post-trial motion to mold the verdict to include $12,473.50 for attorney's fees and costs and denied Appellant's post-trial motion. The court order recognized the $67,934.81 judgment as a lien on the proceeds from the sale of the condominium. On May 4, 2015, Appellee filed a *praecipe* for writ of execution. Appellant timely filed a notice of appeal on May 27, 2015. On May 29, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on June 17, 2015.

Appellant raises the following issues for our review:

> DID THE CIVIL TRIAL COURT ERR…BY DECLARING IN 2015 THAT A VERDICT AWARDED ON 3/18/2013 THAT ACCUMULATED MAINTENANCE OR CONDOMINIUM FEES INCURRED DURING 1) PRE-DEATH, WHEN CAPPY WAS ACTING AS P.O.A., (JANUARY 2006 UNTIL JANUARY 2007)[;] 2) POST DEATH, DURING CAPPY'S CONTINUED OCCUPANCY OF THE UNIT FROM (JANUARY 2007 UNTIL SEPTEMBER 11, 2009)[;] AND 3) POST-EVICTION—JULY 2011 THRU DATE OF VERDICT MARCH 18, 2013, WHEN ADMINISTRATOR WAS ABLE TO COMMENCE ACTUAL

ESTATE ADMINISTRATION AND PREPARE THE CONDO FOR SALE, INTO ONE CONTINUOUS LIEN WHEN TITLE 68 PA.C.S.A. SEC. 3315(D) DICTATES THAT A LIEN EXTINGUISHES WHEN A CONDO ASSOCIATION FAILS TO [INSTITUTE] SUIT TO ENFORCE A LIEN WITHIN THREE YEARS AFTER THE FEES ARE PAYABLE AND BECOME DELINQUENT?

DID THE CIVIL TRIAL COURT ERR BY NOT RECOGNIZING THAT THE SUIT FILED ON FEBRUARY 2, 2012 FOR BREACH OF CONTRACT WAS NOT THE EQUIVALENT [OF A] SUIT TO ENFORCE A LIEN?

DID THE CIVIL TRIAL COURT ERR BY NOT GRANTING THE MOTION *IN LIMINE* WHICH WOULD HAVE PRECLUDED THE INTRODUCTION OF CONDOMINIUM CHARGES ALLEGEDLY INCURRED FROM JANUARY 200[6] UNTIL EJECTION OF CAPPY ASCHEIM FROM UNIT IN JULY OF 2011 INTO EVIDENCE SINCE [APPELLEE] FAILED TO PROPERLY AND TIMELY BRING CLAIMS TO ORPHANS['] COURT AND DEMAND APPROPRIATE RELIEF?

DID THE CIVIL TRIAL COURT ERR BY FAILING TO RECOGNIZE THE APRIL 17TH, 2000 ORDER OF COURT OF JUDGE WETTICK WHICH STATED THAT "IT IS RECOGNIZED THAT [DECEDENT] IS AN INCAPACITATED PERSON" AND PERMIT THAT RULING TO LIMIT [APPELLANT'S] LIABILITY IN A CONTRACT ACTION REQUESTING CONDO FEES IN PART INCURRED DURING [DECEDENT'S] LIFE SINCE [APPELLEE] FAILED TO PROPERLY AND TIMELY BRING CLAIMS TO ORPHANS['] COURT AND DEMAND APPROPRIATE RELIEF?

DID THE CIVIL TRIAL COURT ERR BY EXERCISING JURISDICTION THAT IS EXCLUSIVE TO THE ORPHANS['] COURT DIVISION WHEN IT A) MADE ITS PRE-TRIAL RULINGS AND/OR B) ENTERTAINED [APPELLEE'S] POST-TRIAL MOTION TO MOLD THE VERDICT TO INCLUDE ATTORNEY'S FEES WHEN ATTORNEY'S FEES ARE ONLY AVAILABLE IF [APPELLEE] INSTITUTES AN ACTION TO ENFORCE A LIEN AND SUCH AN ACTION WOULD BE WITHIN THE EXCLUSIVE JURISDICTION OF THE ORPHANS['] COURT?

DID THE TRIAL COURT ERR BY NOT USING THE VERDICT SLIP PROPOSED BY [APPELLANT] WHICH WOULD HAVE DESIGNATED THE VARIOUS TIME PERIODS WHEN FEES [WERE] ACCUMULATED AND ALSO ADDRESSED [APPELLEE'S] FAILURE TO PURSUE ITS CLAIMS IN A TIMELY FASHION?

DID THE TRIAL COURT ERR IN ARGUING THAT THE LIEN-EXTINGUISHMENT ISSUE MIGHT BE WAIVED WHEN THE TOPIC OF A LIEN GENERALLY WAS ONLY RAISED AS A CONSEQUENCE OF [APPELLEE'S] POST-TRIAL MOTION TO MOLD THE VERDICT CITING THE UNIFORM CONDOMINIUM ACT AS ITS AUTHORITY?

DID THE TRIAL COURT ERR IN ITS APPLICATION OF THE DOCTRINE OF LACHES GIVEN THAT 1) [APPELLEE] DID DELAY FOR 7 YEARS TO BRING A BREACH OF CONTRACT ACTION[;] 2) [APPELLEE] NEVER BROUGHT AN ACTION TO ENFORCE A LIEN[;] 3) [APPELLEE] WAS ABLE TO FULLY PROSECUTE ITS ORIGINAL CLAIM UNDER THE BREACH OF CONTRACT THEORY[;] 4) THE JURY AWARDED IT THE FULL AMOUNT OF THE DEBT IT ALLEGED WAS DUE[;] AND 5) THE CIVIL TRIAL COURT'S ACTION OF "DECLARING" A LIEN IN THE AMOUNT OF THE VERDICT HAD THE CONSEQUENCE OF REVIVING AN EXTINGUISHED LIEN ON AN ACTION THAT WAS NEVER PURSUED BY [APPELLEE] AND THE CIVIL TRIAL COURT DOES NOT SEE THAT AS BEING AN INEQUITABLE RESULT?

DID THE CIVIL TRIAL COURT COMMIT FUNDAMENTAL ERROR AND APPLY INCORRECT [PRINCIPLES] OF LAW?

DID THE COURT COMMIT FUNDAMENTAL ERROR WHEN IT CHOSE NOT TO HOLD ANY EVIDENTIARY HEARINGS ON EITHER THE EXTINGUISHMENT OF THE LIEN OR THE ATTORNEY'S FEES ALLEGEDLY INCURRED BY…APPELLEE AND OBJECTED TO BY…APPELLANT?

SHOULD THE COURT'S INTERPRETATION OF…68 PA.C.S.A. [§] 3315 BE REJECTED BECAUSE IT CONTRADICTS ESTABLISHED CANONS OF STATUTORY CONSTRUCTION UNDER PENNSYLVANIA LAW BY RENDERING SECTION 3315(D) INEFFECTIVE, AS APPLIED, AND BY PRODUCING AN ABSURD AND UNREASONABLE RESULT?

WHETHER THE CIVIL COURT ERRED BY TRANSFORMING A VERDICT SPECIFICALLY FOR CONDOMINIUM FEES INTO A LIEN WHEN THE ONLY ISSUE RAISED BY [APPELLEE] DURING THE TRIAL AND PRESENTED TO THE JURY WAS WHETHER CONDOMINIUM FEES WERE OWED FOR THE SUBJECT UNIT AND THE AMOUNT OF THESE FEES FOR WHICH [APPELLANT] IS RESPONSIBLE?

DID THE CIVIL COURT DENY THE JURY ITS ROLE AS FACT FINDER IN GENERAL AND ON THE TOPICS OF LIENS AND EXPIRED LIENS SPECIFICALLY?

DID THE CIVIL COURT [ERR] IN UPHOLDING A "LUMP SUM" VERDICT FOR BREACH OF CONTRACT WITH [APPELLANT] WHEN A) FROM JANUARY 2006 UNTIL JANUARY 2007 [APPELLANT] WAS NOT AN AGENT TO THE INCAPACITATED [DECEDENT;] B) FROM JANUARY 2007 UNTIL SEPTEMBER 11, 2009[,] [APPELLANT] WAS NOT APPOINTED AS ADMINISTRATOR[;] C) FROM SEPTEMBER 11, 2009 UNTIL JULY 2011 WHEN [APPELLANT] DID NOT HAVE ACCESS TO THE UNIT OR DECEDENT'S FUNDS[;] OR FROM JULY 2011 UNTIL THE DATE OF TRIAL, WHEN [APPELLANT] DID IN FACT MAKE SOME PAYMENTS AS ABLE FROM DECEDENT'S FUNDS[?]

WHETHER THE VERDICT WAS AGAINST THE LAW AND THE EVIDENCE?

DID THE TRIAL COURT ERR BY CHARACTERIZING THE ISSUE AS "THE EXTINGUISHMENT OF ANY LIEN BY OPERATION OF § 3315(D) OF THE CONDOMINIUM ACT" PRECLUDES RECOVERY OF UNPAID FEES FROM [APPELLANT] UNDER ANY THEORY OF RECOVERY?

SHOULD THE TRIAL COURT HAVE FRAMED THE ISSUE AS 1) BECAUSE [APPELLEE] DID NOT INSTITUTE LIEN ENFORCEMENT PROCEEDINGS WITHIN 3 YEARS OF WHEN THE ASSESSMENTS BECAME PAYABLE, ANY DEBT ASSOCIATED WITH THOSE PAST ASSESSMENTS CAN NO LONGER BE SECURED BY A LIEN DUE TO EXTINGUISHMENT OF THE LIEN AND 2) ANY ATTORNEY['S] FEES AND EXPENSES ONCE POTENTIALLY AVAILABLE TO [APPELLEE] PURSUANT TO THE UNIFORM

CONDOMINIUM ACT ARE NO LONGER AVAILABLE TO IT ONCE THE LIEN IS EXTINGUISHED?

WHETHER THE INCOMPETENCY OF [DECEDENT] SHOULD HAVE BEEN ATTRIBUTED TO [APPELLANT]?

(Appellant's Brief at 3-5).

As a prefatory matter, we note appellate briefs must conform in all material respects to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure; this Court may quash or dismiss an appeal if an appellant fails to comply with these requirements. Pa.R.A.P. 2101. **See also** Pa.R.A.P. 2114-2119 (addressing specific requirements of each subsection of brief on appeal). Regarding the statement of the case section of an appellate brief, Rule 2117 provides, in pertinent part:

**Rule 2117. Statement of the Case**

**(a)    General rule.**—The statement of the case shall contain, in the following order:

\*    \*    \*

(4)    A closely condensed chronological statement, in narrative form, of all the facts that are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. **See** Rule 2132 (references in briefs to the record).

\*    \*    \*

**(b)    All argument to be excluded.**—The statement of the case shall not contain any argument. It is the responsibility of appellant to present in the statement of the case a balanced presentation of the history of the proceedings and the respective contentions of the parties.

Pa.R.A.P. 2117(a)(4), (b).

Additionally, as to the argument section of an appellate brief, Rule 2119(a) provides:

> **Rule 2119.  Argument**
>
> **(a)      General rule.**—The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).  Importantly:

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities.  This [C]ourt will not consider the merits of an argument which fails to cite relevant case or statutory authority.  Failure to cite relevant legal authority constitutes waiver of the claim on appeal.

*In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012), *appeal denied*, 620 Pa. 724, 69 A.3d 603 (2013).  Where an appellant fails to raise or properly develop issues on appeal, or where the brief is wholly inadequate to present specific issues for review, a court will not consider the merits of the claims raised on appeal.  *Butler v. Illes*, 747 A.2d 943 (Pa.Super. 2000) (holding appellant waived claim where she failed to set forth adequate argument concerning her claim on appeal; appellant's argument lacked meaningful substance and consisted of mere conclusory statements; appellant failed to explain cogently or even tenuously assert why trial court abused its discretion or made error of law).  *See also Lackner v. Glosser*, 892 A.2d 21 (Pa.Super 2006) (explaining appellant's arguments must

adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); **Estate of Haiko v. McGinley**, 799 A.2d 155 (Pa.Super. 2002) (stating rules of appellate procedure make clear appellant must support each question raised by discussion and analysis of pertinent authority; absent reasoned discussion of law in appellate brief, this Court's ability to provide appellate review is hampered, necessitating waiver of issue on appeal).

Instantly, the defects in Appellant's brief are substantial. Appellant's "Statement of the Case" totals twenty-nine (29) pages, most of which are merely a cut-and-paste of prior filings in this litigation and email exchanges between Appellant's counsel and Appellee's counsel. Notably, Appellant fails to present a closely condensed chronological statement containing all relevant facts necessary to resolve this appeal. **See** Pa.R.A.P. 2117(a)(4). Likewise, Appellant does not provide a balanced presentation of the history of the proceedings and the respective contentions of the parties. **See** Pa.R.A.P. 2117(b). Instead, the statement of the case consists mostly of arguments that the court improperly revived an extinguished lien, molded the verdict to include attorney's fees and costs, and decided the matter when the orphans' court allegedly had exclusive subject matter jurisdiction. Inclusion of argument in Appellant's statement of the case violates Rule

2117(b). *See id.*

More importantly, Appellant's argument section falls woefully short of the requisite standards. At the outset, despite the eighteen issues raised on appeal, Appellant's argument is only three pages long. Appellant also failed to divide her argument section into distinct parts corresponding to each of the eighteen issues raised on appeal. *See* Pa.R.A.P. 2119(a). Further, Appellant's brief presents no cogent argument for the issues and includes only extraneous legal citations, which do not support the many different claims raised. *See In re Estate of Whitley, supra*. Appellant's argument merely concludes that her due process rights were violated when the court did not transfer the case to the orphans' court for a ruling on the lien issue. Appellant, however, includes superfluous citations to support this contention. Additionally, Appellant's argument fails to address or acknowledge most of the remaining issues raised on appeal. The substantial defects in Appellant's brief arguably preclude meaningful review and constitute sufficient grounds for this Court to suppress Appellant's brief and dismiss the appeal. *See Butler, supra*.

Nevertheless, to the extent the trial court was able to discern Appellant's issues, our standard of review for the denial of a motion for JNOV is:

> [Whether], when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of

credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Holt v. Navarro*, 932 A.2d 915, 919 (Pa.Super. 2007), *appeal denied*, 597 Pa. 717, 951 A.2d 1164 (2008). Further:

> There are two bases upon which a [JNOV] can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Id.* "When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict…. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact…. A JNOV should be entered only in a clear case." *Id.*

The relevant version of Section 3315 of the Uniform Condominium Act ("UCA") applicable to Appellant's case provided, in pertinent part, as follows:

> **§ Lien for assessment**
>
> **(a) General rule.**—The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the

- 11 -

assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate.

\* \* \*

**(d) Limitation of actions.**—A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable.

**(e) Other remedies preserved.**—Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure.

**(f) Costs and attorney's fees.**—A judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

68 Pa.C.S.A. §§ 3315(a), (d), (e), and (f).[1] "Subsection (e) makes clear that the association may have remedies short of foreclosure of its lien that can be used to collect unpaid assessment. The association, for example, might bring an action in debt or breach of contract against a recalcitrant unit owner rather than resorting to foreclosure." 68 Pa.C.S.A. § 3315 cmt. 3. Importantly, "issues not raised in post[-]trial motions are waived for purposes of appeal." *Diener Brick Co. v. Mastro Masonry Contractor*,

_____

[1] The legislature amended Section 3315 of the UCA on April 20, 2016 (effective June 20, 2016). The amended version of Section 3315(d) now provides a condominium association four years to institute proceedings to enforce a lien before the lien is extinguished. *See* 68 Pa.C.S.A. § 3315(d) (as amended).

885 A.2d 1034, 1038 (Pa.Super. 2005) (citing Pa.R.C.P. 227.1).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Michael E. McCarthy, we conclude Appellant's issues on appeal merit no relief. The trial court opinion fully discusses and properly disposes of the questions it was able to discern as preserved issues. (*See* Trial Court Opinion, filed June 29, 2015, at 1-7 (finding: **(a)** Appellant's Rule 1925(b) statement contends court failed to give Appellant opportunity to argue lien extinguishment pursuant to Section 3315(d) of UCA; however, Appellant's lien extinguishment claim is arguably waived due to Appellant's failure to raise this claim in her post-trial motion; moreover, Appellant's contention that Appellee's lien is extinguished pursuant to Section 3315(d) of UCA is incorrect; mere expiration of lien available to Appellee would not extinguish underlying debt, it would just make debt unsecured by condominium; additionally, comment 3 to Section 3315(e) plainly acknowledges Appellee's authority to recover unpaid condominium, maintenance, and late fees under breach of contract theory; Appellee pursued breach of contract theory, and jury determined Appellee proved underlying debt based on unpaid condominium, maintenance, and late fees; Appellant concedes case went to jury on breach of contract theory; in fact, Appellant's only complaint is that court revived extinguished lien when it transformed damages under breach of contract theory into lien; contrary to Appellant's claim, court did not

- 13 -

revive extinguished lien; verdict rendered by jury constituted assessment against Appellant within meaning of UCA; as such, court had authority pursuant to Section 3315(a) to acknowledge verdict as lien; thus, Appellant's lien extinguishment claim has no merit; **(b)** record does not support Appellant's assertions that court failed to consider "lack of competent contracting party" and should have molded verdict to exclude unpaid condominium, maintenance, and late fees accrued prior to appointment of Appellant as administratrix of estate; Appellant conceded unawareness of any facts sufficient to dispute fee obligation; Appellant further did not allege that Decedent was incompetent when she entered condominium agreement; thus, these claims warrant no relief; **(c)** Appellant insists the court should have reduced verdict pursuant to doctrine of laches; however, Appellant failed to demonstrate prejudice or harm necessary to sustain doctrine of laches claim; any delay in recovery of unpaid condominium, maintenance, and late fees was caused mostly by conflict within Decedent's family; additionally, Appellant's own pre-trial statement described Appellee's diligent pursuit of unpaid condominium, maintenance, and late fees; thus, Appellant was not entitled to doctrine of laches jury instruction or reduction of verdict based on doctrine of laches; **(d)** although Appellant objects to Appellee's request for attorney's fees and costs, UCA authorizes Appellee's request, which is manifestly reasonable under circumstances of case; many legal expenses Appellee incurred were due to

- 14 -

Appellant's repeated attacks on court's jurisdiction despite court's prior resolution of jurisdiction issue; Appellant also claims court erred when it did not hold hearing on attorney's fees issue; however, court engaged in extensive discussions with parties about Appellant's exposure to attorney's fees and costs; court further explained to Appellant that attorney's fees were presumptively available to Appellee pursuant to UCA; thus, hearing on attorney's fees issue would serve only to delay proceedings unnecessarily; therefore, court properly molded verdict, entered judgment in favor of Appellee, and denied Appellant's post-trial motion). Accordingly, to the extent the trial court found these issues preserved, we affirm on the basis of the trial court opinion.[2]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2016

_____

[2] Due to our disposition, we deny all open motions.

Circulated 10/20/2016 02:10 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY,
PENNSYLVANIA

5100 FIFTH AVENUE CONDOMINIUM
ASSOCIATION,

                Plaintiff,

vs.

ESTATE OF ESTHER F. ASCHEIM,
BARBARA EFFRON in her capacity as
ADMINISTRATOR of the Estate,

                Defendant.

CIVIL DIVISION

No.    GD 12-002331
        846 WDA 2015

**OPINION**

BY:

Honorable Michael E. McCarthy
709 City-County Building
414 Grant Street
Pittsburgh, PA 15219

COPIES TO:

Counsel for Plaintiff:

Fred C. Jug, Jr., Esquire
1109 Grant Building
310 Grant Street
Pittsburgh, PA 15219

Counsel for Defendant:

Kim A. Bodnar, Esquire
The Mitchell Building, Suite 701
304 Ross Street
Pittsburgh, PA 15219



FILED
15 JUN 26 PM 3:10
DEPT...
CIVIL...DIVISION
ALLEGHENY COUNTY PA

41

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

5100 FIFTH AVENUE
CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

ESTATE OF ESTHER F. ASCHEIM, DECEASED,
BARBARA EFFRON, in her capacity
as Administrator of the Estate,

Defendant.

Civil Action

No. GD-12-2331
846 WDA 2015.

## OPINION

During the course of litigation, a party by means of motion, objection, proposed points for charge or other appropriate method preserves the grounds on which it might eventually rely to obtain post-trial relief. A party who is disappointed by a verdict identifies and relies upon those grounds when it presents a motion for post-trial relief consistent with the requirements of Pa R.C.P. 227.1. Any basis for relief that either has not been appropriately preserved at points prior to the verdict or is not identified in a motion pursued under Rule 227.1 is deemed waived.

A party whose motion for post-trial relief is unsuccessful, may pursue any properly preserved issue on appeal. In that event, the trial court may direct an appellant to provide an appropriately concise statement of errors complained of on appeal pursuant to P.R.A.P. 1925 (b). That statement should afford the court some clarification of the errors alleged by an appellant.

Minimally, a 1925(b) statement should indicate to the court whether all or merely some of the matters raised by a motion for post-trial relief are the subject of the appeal.

In the case at hand, the 1925(b) statement submitted by the defendant estate complains of matters that were not mentioned in the motion for post-trial relief. Reiterated throughout the statement of matters complained of on appeal is the estate's contention that the court failed to provide the defendant an opportunity to argue the extinguishment of a lien pursuant to §68 Pa. C.S.A. 3315(d). No reference to lien-extinguishment appears in any part of the estate's motion for post-trial relief. Arguably, the matter has been waived. Nonetheless, it will be addressed.[1]

The Uniform Condominium Act imposes a three-year limitations period on the enforcement of a lien imposed for any unpaid assessment:

> **(d) Limitation of actions.**--A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable.

The defendant contends that the extinguishment of any lien by operation of §3315(d) of the Condominium Act precluded recovery of unpaid fees from the condominium owner under any theory of recovery. That is incorrect. Although a lien may be an incident of and inseparable from any debt that it secures, the enforceable debt of an individual can certainly continue to exist distinct from any unsatisfied expired lien that once secured that debt. The mere expiration of a lien available to a condominium association under §68 Pa. C.S.A. 3315(d) would not extinguish the underlying debt that a unit owner had accumulated by reason of unpaid fees. Expiration of

---

[1]This is not an appeal from a verdict, but is an appeal following the entry of judgment. The judgment and order of court, dated April 29, 2015, declared that the condominium association possessed a lien in the amount of the verdict. Further, reasonable cost and expenses, including reasonable attorney fees, were awarded.

2

the lien would render the debt unsecured by the condominium unit and compel an association to seek a money judgment for fees owed, but the existence of a lien is not indispensable to a claim of a condominium association for outstanding condominium fees.

The Condominium Act explicitly preserves an association's right to pursue fees in a manner other than execution of a lien.  §3315 of the Act provides:

> **(e) Other remedies preserved.**--Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure.

> **(f) Costs and attorney's fees.**--A judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

The authority of a condominium association to proceed upon a contract theory in its pursuit of unpaid fees is even more plainly acknowledged in official comments to the Condominium Act:

> 3. Subsection (e) makes clear that the association may have remedies short of foreclosure of its lien that can be used to collect unpaid assessments. The association, for example, might bring an action in debt or breach of contract against a recalcitrant unit owner rather than resorting to foreclosure.[2]

In the case at hand, the association elected to pursue the unpaid assessments under a contract theory.  The question put to the jury was whether the plaintiff-association adequately

---

[2] See Comments provided by the National Conference of Commissioners on Uniform State Laws relating to the Uniform Act.

3

proved an underlying debt appertaining to the defendant estate based upon the non-payment of condominium fees. The defendant concedes that the case went to the jury on a breach of contract theory. In fact, the defendant complains that the court erred when it "transform[ed] a verdict rendered by a jury in *a breach of contract case* into a lien when that lien is extinguished in whole or in part" [3]

Contrary to the defendant's characterization, the April 29, 2015 order of court did not revive an extinguished lien. The jury entered a verdict in favor of the plaintiff association and against the defendant in the amount of $55,461.31, a figure that was consistent that was entirely with the calculations of condominium fees and late fees provided to the jury through plaintiff's case. The Condominium Act provides, at 68 Pa.C.S.A. §3315, that such recoveries are themselves enforceable as assessments. The verdict rendered for condominium fees and late fees constituted, in itself, an assessment or fine imposed against the unit owner within the meaning of the Condominium Act. As such, it may be declared a lien pursuant to §3315(a) of the Condominium Act, which provides in straightforward fashion that:

> **General rule.--**The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due.

The molding of the verdict and entry of judgment in this matter did not resurrect a defunct lien; it acknowledged the verdict for unpaid assessments and fees as a lien.

The defendant's 1925(b) statement asserts vaguely that the court failed to properly consider "the lack of a competent contracting party". The statement asserts additionally that the verdict should have been molded to exclude any condominium fees or late fees that had

---

[3] Concise Statement at Nos. 5, 7, 9-11; italics added.

accumulated in advance of the appointment of the administratrix of the decedent's estate.[4] That contention finds no support in the record. At trial, the plaintiff demonstrated that each condominium unit owner receives a copy of the governing documents of the association. Those documents inform unit owners that they are required to pay condominium fees as the fees come due. The administratrix conceded that she was unaware of any facts sufficient to dispute the claims of the plaintiff-association regarding the obligations of unit owners. Further, the defendant made no allegation in its Answer and New Matter in this case that Ms. Ascheim was incompetent at the time of being informed of and accepting the terms of condominium ownership. Subsequent incompetency would not have voided the obligations undertaken by Ms. Ascheim as a condominium owner. See, *Weir by Gasper v. Estate of Ciao*, 521 Pa. 491, 556 A2d 819 (1989).

The defendant insists, however, that the verdict amount should have been reduced pursuant to its assertion of the doctrine of laches. Laches is an affirmative defense. To the extent that the defendant urges that the plaintiff association is estopped from asserting any part of its claim to condominium fees that remained unpaid during the term of ownership by Ms. Ascheim or her estate, that estoppel by laches cannot be adequately established merely by demonstrating some delay on the part of the plaintiff in pursuing its debts. A defendant invoking the doctrine of laches must also affirmatively establish that, in reasonable anticipation on its part that the plaintiff would belay its claim against the defendant or abandon that claim entirely, the defendant had so changed his own circumstances that some additional harm will likely result to the defendant should the plaintiff be permitted to fully prosecute and recover its original claim. There is no indication of any such inequitable result here; any inequity described by the

---

[4] See, e.g., "Statement of Errors Complained of on Appeal" at No. 13, 22.

5

defendant relates to the internecine conflicts of the Ascheims, not to the plaintiff. There was no acquiescence on the part of the plaintiff condominium association to any delayed payment of condominium fees. In fact, the defendant's own pre-trial statement described the plaintiff's diligent past pursuits of delinquent fees. The plaintiff accurately observed that, although the defendant requested a jury instruction as to laches, the defendant ultimately produced no evidence of prejudice attributable to the plaintiff that would support such an instruction.

The defendant objects to the award of attorney fees and expenses to the plaintiff. Reasonable costs and expenses, including legal fees incurred in connection with a condominium association's effort to collect monies are recoverable under the Condominium Act and are, therefore, available to an association as a matter of law. The litigation expenses that the plaintiff has claimed in this matter are itemized and modest, as are the legal fees it has requested. Plaintiff's counsel fees totaled $4,038.50 at the time the trial commenced, and at that juncture were manifestly reasonable.

Given the necessary expenditure of time and effort at trial and subsequent to the verdict, the request for fees has remained reasonable and, indeed, the court is persuaded that an economy of hours has been achieved by reason of the familiarity of plaintiff's counsel with pertinent law and the focused and restrained character of counsel's arguments. Further, notwithstanding that very early on in this matter Judge Friedman made it clear to the defendant that plaintiff's claim could be pursued through the civil division, the defendant has caused the parties to travel between the civil and orphans court divisions time and again on the matter of the defendant's liability for unpaid condominium fees. The defendant cannot complain that by repeatedly revisiting its arguments as to the jurisdiction of the divisions, it has caused the recoverable fees of plaintiff to increase.

6

Notwithstanding the discussions and review of all aspects of the case that occurred in the course of the status conferences scheduled for the particular purpose of resolving this matter, including, specific discussion on the extent of the defendant's exposure to counsel fees, the defendant now asserts that it was error not to hold evidentiary hearings "on the attorney's fees allegedly incurred by the Appellee and objected to by the Appellant". There are instances in which the right of participants to receive counsel fees as sanctions must be determined through an evidentiary hearing as to the underlying conduct that purports to be the basis for sanctions in the form of fees. See, e.g., 42 Pa.C.S.A. §2503. This is not such an instance. On the contrary, if an association's pursuit of condominium fees and late fees through litigation under the Condominium Act results in a recovery of such fees, then attorney fees are presumptively available. See, 68 Pa.C.S.A. §3315. The matter of fees and the range of fees were addressed fully in conference and were considered by the court in the context of the nature of the case, the quality and efficiency of representation and the end result of that representation. A formal hearing as to attorney fees would have served no end other than to occasion further delay and to commit the plaintiff to additional time and expense in order to put the math on the record and confirm the obvious.

For all those reasons, the court entered the order of April 29, 2015 molding the verdict and formally denying the defendant's motion for post-trial relief.

By the Court:

June _____, 2015

_____, J.

7